FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 24, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAULINA P.,[1] <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] <br><br> Defendant. | No. 2:20-cv-00325-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 16, 18 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 16, 18.  The parties consented to proceed before a magistrate judge.  ECF No. 5.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 16, and denies Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER - 2

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

3    1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4    rational interpretation, [the court] must uphold the ALJ's findings if they are

5    supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

6    F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

7    ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

8    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

9    *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

10    decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

11    *Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

13    A claimant must satisfy two conditions to be considered "disabled" within

14    the meaning of the Social Security Act.  First, the claimant must be "unable to

15    engage in any substantial gainful activity by reason of any medically determinable

16    physical or mental impairment which can be expected to result in death or which

17    has lasted or can be expected to last for a continuous period of not less than twelve

18    months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

19    impairment must be "of such severity that he is not only unable to do his previous

20    work[,] but cannot, considering his age, education, and work experience, engage in

ORDER - 3

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

ORDER - 4

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

ORDER - 5

the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 26, 2018, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of August 3, 2017. Tr. 18, 76-77, 213-25. The applications were denied initially and on reconsideration. Tr. 136-39, 143-48. Plaintiff appeared before an administrative law judge (ALJ) on February 11, 2020. Tr. 37-75. On February 26, 2020, the ALJ denied Plaintiff's claim. Tr. 15-36.

ORDER - 6

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2022, has not engaged in substantial gainful activity since August 3, 2017.  Tr. 20-21.  At step two, the ALJ found that Plaintiff has the following severe impairments: Wernicke-Korsakoff syndrome secondary to alcohol abuse, mild alcohol-induced peripheral neuropathy, and neurocognitive deficits secondary to Wernicke-Korsakoff.  Tr. 21.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  *Id*.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [S]tanding/walking is limited to two hours per day so she would need the ability to alternate positions at will to accommodate the two hour maximum limit.  She would be further limited to occasional climbing of ramps and stairs, but no climbing of ladders, ropes, or scaffolds. She can occasionally balance.  She must avoid hazards.  She is able to understand, remember, and carry out very simple, routine, and repetitive tasks and instructions in a predictable environment with seldom change.  She cannot perform tasks involving judgment or decision-making or fast-paced production work.  She can have only brief, tangential contact with the public and superficial interaction with co-workers (superficial is defined as non-collaborative with no tandem tasks).

Tr. 23.

At step four, the ALJ found Plaintiff is unable to perform any of her past relevant work.  Tr. 28.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert,

ORDER - 7

there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as mail clerk, parking lot attendant, and assembler. Tr. 29.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of August 3, 2017, through the date of the decision.  *Id.*

On July 29, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

    1.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

    2.  Whether the ALJ properly accounted for Plaintiff's limitations in the RFC.[3]

---

[3] Plaintiff lists two additional issues, arguing that the ALJ erred in posing an incomplete hypothetical to the vocational expert, and in finding Plaintiff capable of substantial gainful activity at step five.  ECF No. 16 at 12.  However, Plaintiff only

ORDER - 8

ECF No. 16 at 12.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 16 at 14-16. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

addresses these issues within her argument regarding the ALJ's RFC findings; as such, the Court addresses all three issues within the RFC section.

ORDER - 9

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

symptom claims)).  "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 24.

### 1. Improvement with Treatment

The ALJ found Plaintiff's symptom complaints were inconsistent with her improvement with treatment.  Tr. 24-25.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ found Plaintiff's neuropathy symptoms improved with treatment.  Tr. 24-25.  Plaintiff reported the symptoms started in 2016 but had resolved within a few weeks, and returned in May 2017, with increased in severity by June 2017; on examination, Plaintiff had weakness in her upper and lower extremities.  Tr.

ORDER - 11

1061, 1074-76.  In July 2017, a provider noted Plaintiff's neuropathy was improved with medication, her moderate balance disturbance had improved remarkably, and her gait and motor systems were well-preserved.  Tr. 24 (citing Tr. 1083).  Plaintiff was prescribed a cane, but she reported no longer needing it as she had been walking normally for two weeks by July 6, 2017.  Tr. 1079.  While hospitalized in August 2017, Plaintiff required the use of a walker.  Tr. 351.  In October 2017, Plaintiff continued to use a walker, and had a slow, unsteady, and methodical gait, and pain with palpation in her hands.  Tr. 1110-11.  In November 2017, Plaintiff was no longer using a walker for ambulation and was able to pick her feet up better, though she still had a wide, somewhat shuffled gait, and occasionally used the wall for balance.  Tr. 24 (citing Tr. 1122).  Plaintiff had no focal deficits, improved coordination and strength.  Tr. 1122.

By March 2018, the records noted Plaintiff had slow progressive improvement in her symptoms, and although she had a mildly off-balance gait, her sensory examination was improved, Tr. 24, 1153-54, and in September 2018, Plaintiff reported she had been steadily improving, Tr. 1156.  In October 2018, Plaintiff reported her symptoms were stable, Tr. 24 (citing Tr. 1196), and in January 2019, Plaintiff reported no worsening of her neuropathy and stated medications helped, Tr. 24 (citing Tr. 1185, 1190).  In January 2020, Plaintiff

ORDER - 12

reported ongoing pain in her hands and feet, but stated it was not as severe as it had

previously been.  Tr. 25 (citing Tr. 1265).

The ALJ also found Plaintiff's Wernicke-Korsakoff syndrome symptoms

improved with treatment.  Tr. 24.  Plaintiff was hospitalized in August 2017, and

was treated with thiamine and occupational therapy, and while she remained

confused during the hospitalization, she became more alert and interactive, and

was discharged in September 2017.  *Id.* (citing Tr. 378, 781).  During the

hospitalization, Plaintiff had significant confusion, disorientation, and general

neurologic deficits.  Tr. 378, 380, 385, 411.  Plaintiff was discharged in September

2017 with a requirement for 24/7 at home care.  Tr. 778.  In October 2017, Plaintiff

reported improvement in her memory, though her memory was still labeled as

"poor," and she was more interactive, Tr. 24 (citing Tr. 1108), and the next month

her speech was more coherent, and she was able to answer questions, though she

still had a poor memory and repeatedly asked the same questions, Tr. 24, 1120,

1122.  In December 2017, Plaintiff was alert and oriented. Tr. 1151.

In August 2018, Plaintiff attended a psychological consultative examination.

Tr. 26, 1169-74.  Plaintiff was oriented to the month, year and day, but not the

date, her long-term memory was "good," though she was not aware of recent

events, she recalled three out of three objects immediately but zero after five

minutes, she could not perform serial sevens, and performed serial threes slowly,

ORDER - 13

she was able to spell "world" both forward and backward, was able to repeat digits

forward and backward, and performed Trails A with no errors and one error with

Trails B.  Tr. 1172-73.  In September 2018, a provider noted Plaintiff's "memory is

very poor," although she had normal mood, affect, behavior, judgment, and

thoughts and there is no reference to any memory testing performed.  Tr. 1155,

1159.  The ALJ noted Plaintiff had multiple normal mental status examinations in

2019, and while Plaintiff and her provider noted significant memory deficits at that

time, the normal mental statuses state Plaintiff had normal mood, affect, behavior,

judgment, and thoughts; the examinations make no mention of any memory

testing.  Tr. 25, 1185, 1188-89, 1246, 1250-51.

At a July 2019 psychological examination, Plaintiff was oriented, and had

normal immediate memory, but recalled zero items after a five-minute delay, could

not answer three of the fund of knowledge questions, spelled "world" correctly

forward and backward, followed a three-step instruction, and reported she could

not perform a multiplication problem.  Tr. 1235.  Plaintiff's memory testing placed

her below the first percentile of individuals in her age group, but the validity scores

indicated her test results were unlikely to be a valid reflection of her functioning,

and she demonstrated a "higher than excepted rate of forgetting."  Tr. 1236-38.  In

January 2020, the provider noted, "No changes with memory, chronic and

persistent," Plaintiff looked to her significant other to answer many questions for

ORDER - 14

her, due to her poor memory, and they reported ongoing memory issues, including

needing to use a whiteboard to help her remember things, Tr. 1265, and Plaintiff

again was alert and oriented, and had normal mood, affect, behavior,

judgment/thoughts, but there is no mention of memory testing, Tr. 1270.

Plaintiff argues the ALJ erred in rejecting her memory complaints and notes

her provider opined Plaintiff is unable to work.  ECF No. 16 at 16.  However,

while Plaintiff offers a different interpretation of the evidence, the ALJ's finding

that Plaintiff's symptoms improved with time is supported by substantial evidence.

Despite notes that Plaintiff had ongoing memory loss, there is minimal objective

evidence to corroborate the memory loss.  The 2018 testing demonstrated

Plaintiff's memory had significantly improved from her 2017 functioning, and the

2019 testing demonstrated some improvement, with some evidence of symptom

exaggeration discussed further *infra*.  Further, Plaintiff does not challenge the

ALJ's rejection of the medical opinions.  On this record, the ALJ reasonably found

that Plaintiff's symptoms, when treated, were not as severe as alleged.  This was a

clear and convincing reason to reject Plaintiff's symptom claims.

### 2. Symptom Exaggeration

The ALJ found Plaintiff exaggerated her impaired memory.  Tr. 25.  The

tendency to exaggerate provided a permissible reason for discounting Plaintiff's

reported symptoms.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)

1   (The ALJ appropriately considered Plaintiff's tendency to exaggerate when

2   assessing Plaintiff's credibility, which was shown in a doctor's observation that

3   Plaintiff was uncooperative during cognitive testing but was "much better" when

4   giving reasons for being unable to work.).  Moreover, in evaluating symptom

5   claims, the ALJ may utilize ordinary evidence-evaluation techniques, such as

6   considering prior inconsistent statements.  *Smolen v. Chater*, 80 F.3d 1273, 1284

7   (9th Cir. 1996).

8          The ALJ found Plaintiff may not have answered the questions in a forthright

9   manner at the July 2019 psychological examination.  Tr. 25.  It was consistently

10  noted that Plaintiff had a higher-than-expected degree of forgetting.  *Id.*  While

11  Plaintiff's memory testing would have suggested her memory was worse than 99.9

12  percent of the population, Plaintiff was able to answer questions, was fully

13  oriented, and was able to perform multiple tasks correctly, including performing a

14  three-step command.  Tr. 25, 1234-35.  The personality assessment inventory

15  (PAI) results indicated that Plaintiff's test results are unlikely to be a valid

16  reflection of Plaintiff's functioning.  Tr. 26, 1236.  Plaintiff argues there is no

17  evidence of exaggeration because Dr. Genthe stated Plaintiff was cooperative and

18  genuine in her answers, and Plaintiff argues the ALJ relied on a computer analysis

19  of the test scores.  ECF No. 16 at 16.  However, the ALJ's interpretation of the

20  evidence in finding inconsistencies in the examination results, and the

ORDER - 16

consideration of the PAI results, is reasonable.  This was a clear and convincing

reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 3.  Activities of Daily Living

The ALJ found Plaintiff's symptom claims were inconsistent with her

activities of daily living.  Tr. 25.  The ALJ may consider a claimant's activities that

undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

2001).  If a claimant can spend a substantial part of the day engaged in pursuits

involving the performance of exertional or non-exertional functions, the ALJ may

find these activities inconsistent with the reported disabling symptoms.  *Fair v.

Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a

claimant need not vegetate in a dark room in order to be eligible for benefits, the

ALJ may discount a claimant's symptom claims when the claimant reports

participation in everyday activities indicating capacities that are transferable to a

work setting" or when activities "contradict claims of a totally debilitating

impairment."  *Molina*, 674 F.3d at 1112-13.

While Plaintiff has generally reported no improvement in her memory loss,

the ALJ found Plaintiff's ability to complete her personal care, activities of daily

living, and schedule her own appointments, was inconsistent with her allegations.

Tr. 25.  Plaintiff reported in 2018 and in 2019 that she did not need assistance with

her personal care or household chores, that she could cook simple meals, visit

others, grocery shop every two weeks, and she was able to handle her own funds

and pay bills.  Tr. 22, 1172-73, 1230-31.  Plaintiff's significant other reported

Plaintiff was able to perform small tasks around the house by herself, such as her

personal care, sweeping, helping with dishes, using her phone, and preparing meals

in the microwave, and she assists with walking the dog and shopping, although she

sometimes forgets what she has completed and has pain with continued use of her

hands.  Tr. 27, 62, 64, 263-64, 280.  Plaintiff's significant other also reported

Plaintiff does not need reminders to handle her personal care, and she is able to go

out alone.  Tr. 281-82.  On this record, the ALJ reasonably concluded that

Plaintiff's activities of daily living were inconsistent with her symptom claims.

This finding is supported by substantial evidence and was a clear and convincing

reason to discount Plaintiff's symptom complaints.

**B. RFC**

Plaintiff faults the ALJ for not incorporating her neuropathy-related

restrictions into the RFC.  ECF No. 16 at 17-18.  At step four of the sequential

evaluation, the ALJ must determine the claimant's RFC.  20 C.F.R. §§

416.920(a)(4)(iv), 404.1520(a)(4)(iv).  "[T]he ALJ is responsible for translating

and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc.*

*Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  "[A]n ALJ's assessment of a

claimant adequately captures restrictions related to concentration, persistence, or

ORDER - 18

pace where the assessment is consistent with restrictions identified in the medical

testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). To

the extent the evidence could be interpreted differently, it is the role of the ALJ to

resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec.*

*Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). Where evidence is subject to more

than one rational interpretation, the ALJ's conclusion will be upheld. *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Hill*, 698 F.3d at 1158 (recognizing

the court only disturbs the ALJ's findings if they are not supported by substantial

evidence).

Plaintiff argues the ALJ failed to account for her limitations regarding "her

pain from hands and feet neuropathy," and her "limited ability to stand and/or walk

for extended periods of time." ECF No. 16 at 17. Plaintiff contends the ALJ

should have limited her to sedentary work with additional limitations, including a

limitation to account for her reduced capacity for being on-task. *Id.* However,

Plaintiff does not point to any specific evidence of limitations caused by her

neuropathy or evidence of neurocognitive limitations that the ALJ improperly

rejected. Plaintiff does not point to any specific opinions to support her arguments

and does not challenge the ALJ's reasons for rejecting the medical opinion

evidence, and the ALJ's rejection of Plaintiff's symptom claims was supported by

substantial evidence. Defendant argues the ALJ was not required to incorporate

ORDER - 19

properly rejected evidence into the RFC.  ECF No. 18 at 12.  The Court agrees

with Defendant's analysis.

   Plaintiff further argues she should have been limited to sedentary work,

given the limitation to standing/walking no more than two hours in a day.  ECF

No. 17 at 17.  The ALJ limited Plaintiff to light work, with a limitation to

standing/walking a maximum of two hours per day.  Tr. 23.  The vocational expert

was asked if an individual with a light RFC, with the two-hour stand/walk

limitation, among other limitations, would be able to perform work that exists in

the national economy, and the expert gave multiple jobs, as reflected in the ALJ's

decision.  Tr. 29, 69-70.  The expert also testified that even if the RFC was a

sedentary RFC, there were multiple positions that could be performed with a

sedentary RFC with the additional limitations.  Tr. 70-71.  As such, any error in

labeling the RFC a light RFC rather than a sedentary RFC is harmless.  *See*

*Molina,* 674 F.3d at 1115.

### CONCLUSION

   Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

   1. The District Court Executive is directed to substitute Kilolo Kijakazi as

Defendant and update the docket sheet.

ORDER - 20

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED August 24, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 21